PACE *v.* STATE.

Opinion delivered June 11, 1928.

*Robert L. Rogers,* for appellant.

*H. W. Applegate,* Attorney General, and *Walter L. Pope,* Assistant, for appellee.

HART, C. J., (after stating the facts). In *Ex parte Robinson,* 19 Wall. 505, Mr. Justice Field, speaking for the Supreme Court of the United States, said:

"The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice."

This view has been adopted by this court in *Turk and Wallen* v. *State,* 123 Ark. 341, 185 S. W. 472, and *Weldon* v. *State,* 150 Ark. 407, 234 S. W. 466, 18 A. L. R. 202.

In the first case cited this court said that the power to punish for contempt is inherent in courts of justice, and the right to inflict punishment upon an offender against their dignity and authority is an incident of judicial power which cannot be removed by statutory enactment. It was said that preventing the appearance of a litigant in court for the prosecution of a civil suit, by intimidation and threats, was an obstruction of judicial procedure and tended to bring the administration of justice into disrepute. Hence it was held that the court did not exceed its authority in assessing the punishment inflicted on the defendants in that case.

In the Weldon case it was held that, by the common law, a court may punish as for contempt insults offered to the person of the judge in consequence of his judicial acts, though offered on a day when court was not in session and at a place where court could not be legally held.

In *Brannon* v. *Commonwealth,* 162 Ky. 350, 172 S. W. 703, L. R. A. 1915D, 569, it was held that it is a criminal contempt for one under several indictments, in one of which the jury is out, but eventually returns a verdict of guilty, with another yet to be tried, to commit a battery on a witness who testified against him in the pending case and is to be called in a subsequent one, for the purpose of punishing him for the testimony given and intimidating him for the future. The court said:

"For one to commit, as was done by the appellant in this case, an assault and battery upon the witness as a

punishment for giving testimony against him in an action or criminal prosecution then pending, though in part disposed of, or as a means to intimidate him and influence his testimony expected to be given in the future trial of an action or criminal prosecution then pending, is a criminal contempt, because such conduct is as much an interference with the authority and dignity of the court and an obstruction of justice as would be the intimidation or bribery of a witness, or any contempt committed in the presence of the court. The evidence clearly proves appellant's guilt of such a contempt; and, this being true, it was within the power and jurisdiction of the court to proceed against him by rule and summarily to try him, as was done in this case.''

It was also insisted in that case that the court erred in telling the jury that it might find defendant guilty if his motive for committing the assault and battery was to punish Cook, the person assaulted, for testifying in the case just tried. This contention rests on the ground that, if the assault was committed on this account, it would not constitute a contempt in the meaning of the law. The court held that, as the case tried must be regarded as pending in court at the time of the assault upon the witness, the assault, if committed by way of punishment for the testimony given by Cook in the case, was as much a contempt as if it had been committed for the purpose of intimidating Cook as a witness in a future trial to be had of the other indictment, which had been continued to the succeeding term of court.

The power of the court to punish for contempt consisting of an assault upon one of the attorneys in a pending case has been recognized in *United States* v. *Barrett,* 187 Fed. 378. It was there held that where, after an action had been tried before a jury in a Federal Circuit Court, and the jury had retired to consider the case, two persons interested in the corporation defendant made an unprovoked assault upon plaintiff's attorney because of his argument, on the street, in full view of the jury room, they were guilty of contempt. Judge Speer said

that it was the constitutional privilege of parties to have counsel, and that the occupation of counsel in the interest of his client in trying the case must be uninterfered with by violence. Continuing, the learned judge said:

"He has the right to argue his client's case. If he violates the proprieties of the courtroom, and the attention of the court is called to it, he will be immediately stopped. If he is guilty of impertinent defamation, the courts are open by due process of law to the party defamed, in order to recover righteous damages, and there would be no difficulty in maintaining such a case. It is not within the proper power of the parties to the litigation to take the law into their own hands, and assault the counsel when they have been offended, or imagine that they have been offended. The counsel in a case is a minister of justice. He is the counselor of the court. Without his aid the court cannot get along. Can it be possible that, in our country, the court must regard as trivial an unprovoked assault upon counsel, who has done his duty as he saw it, upon a controversy which necessarily involved the question of the veracity of the contending parties, to deny him the right, in a general way, to insist that his client was truthful and that the other side was not truthful? This would be to deny the plaintiff his day in court, and to deny him due process of law. If the attorney was offensive, or if the party thought he was offensive, the means of redress is not by resorting to violence, but by appealing to the law of the land."

We think this is a full, clear and comprehensive statement of the reason for the rule. In the case at bar the verdict of the jury had been returned into court, and counsel for the plaintiffs had obtained leave for an extension of time within which to file a motion for a new trial. The court had taken a recess at the noon hour, and the judgment in the case had not been entered of record. Counsel for the plaintiffs had a right, and indeed it was their duty, to see that a proper judgment was entered in the case. Hoskins testified that he was assaulted and

severely beaten by Pace on his way back to the courtroom, within a short time after he had left it after making the closing argument in a damage suit in which the defendant's wife was a witness. Hoskins stated positively that Pace told him that he was going to assault and beat him because of the remarks he had made concerning his wife in his closing argument. Under these circumstances the circuit court was justified in finding that the assault and battery by Pace upon Hoskins was in contemplation of an argument made during the pending trial, and was calculated to obstruct the administration of justice and to degrade the authority of the court, and to contaminate the purity of its proceedings. Hence it had the power and authority to punish Pace for contempt of court. See *In re Hand,* 89 N. J. Eq. 469, 105 Atl. 594.

This brings us to a consideration of whether the punishment was excessive or not. According to the testimony of Pace, he had become very much angered and excited because he had been informed that Hoskins had applied a vile epithet to his wife and some other nurses who were witnesses for the defendants in a damage suit in which Hoskins was attorney for the plaintiffs. It is true that it turned out that Hoskins had applied no vile epithet to the wife of Pace, but Pace did not know this at the time he made the assault. He had been advised that he must wait until after the trial was over before seeing Hoskins about the matter. He accidentally met Hoskins during the noon hour of the court recess, after the trial was finished, and Pace was under great mental stress and excitement at the time. Under these circumstances we think a milder penalty will serve the ends of justice, and that the jail penalty should be remitted. *Baker* v. *State, ante* p. 13. Therefore it will be ordered that the judgment be modified by remitting the jail sentence and allowing the fine of $50 to stand. Otherwise the judgment will be affirmed. It is so ordered.