W. D. WARD *v.* Angela WARD

80-282                                      617 S.W. 2d 364

Supreme Court of Arkansas
Opinion delivered June 22, 1981

*Ponder & Jarboe*, for petitioner.

*Wilson & Grider*, by: *Bob Castleman*, for respondent.

JOHN I. PURTLE, Justice. Petitioner was held in contempt for his willful and deliberate falure to pay child support as ordered by the Chancery Court of Lawrence County. On appeal petitioner insists that his failure to pay was not willful and deliberate; that the court should have held up the proceedings until the appellant had the services of an attorney; and that the punishment was excessive under the circumstances. We think the amount of the punishment was excessive under the circumstances but otherwise agree with the trial court.

Petitioner and respondent were separated July 15, 1976, and did not live together thereafter. However, at the divorce hearing on December 27, 1978, the proof was that respondent had a child on January 27, 1978. In other words, the parties had not lived together for about 18 months at the time the child was born. The chancellor held the petitioner was the father of the child because he did not prove inaccessibility. No appeal was filed from the divorce decree which was entered of record on January 10, 1979.

On August 7, 1980, respondent filed a petition asking that petitioner be cited for contempt of court for his failure to pay the $10 per week which he had been ordered to pay at the time of the divorce. On August 8, 1980, the court issued a citation directing the petitioner to appear and show cause. On September 10, 1980, the petition to show cause was called on the court's docket. At that time the petitioner appeared without counsel, and the chancellor explained the severity of the offense and possible consequences if found guilty. The chancellor, upon his own motion, continued the matter until October 8, 1980, in order that petitioner might consult with an attorney. On October 8, 1980, the petitioner again appeared at the hearing without counsel and attempted to represent himself. The result was not good. There is no need to set out the testimony to any great extent. It is well epitomized by the following questions and answers:

BY THE COURT: You stood there and you said you had no intention of paying it because —

BY MR. WARD: I don't.

* * *

BY THE COURT: All right, do you desire to testify? Let me explain that to you. You cannot be forced to testify against yourself. You have the right to remain silent if you want. You may testify if you desire. To be quite candid with you, that means try and explain it fully to you. You have stood there and you have said you willfully didn't pay it and you don't intend to pay it.

BY MR. WARD: That's correct.

BY THE COURT: Sir?

BY MR. WARD: That's correct.

Petitioner further stated on examination by the court, "Even if you explained to me that I am going to jail if I don't start paying I am not going to pay nothing. That's not my kid."

At the conclusion of the hearing on October 8, 1980, the petitioner was sentenced to six months in jail to commence immediately. He petitioned this court for certiorari which was granted. Petitioner obtained bail in the amount of $1500 and stayed the execution of the sentence on November 10, 1980. Therefore, he spent a little more than a month in jail before being released.

It is obvious that the refusal to pay the $10 per week was willful and intentional. However, the petitioner's refusal to pay was apparently based upon his misunderstanding of the law and his insistence that he was not the father of the child for whom the support was being paid. However, no appeal having been taken from the divorce decree, the matter of the paternity of the child is final and the petitioner is the legal father. The petitioner did not speak contemptuously toward the court nor indicate a disrespect for the court or the proceedings. He merely insisted that he was not the father of the child and did not intend to support it.

Although no attempt was made by either party to determine whether this was criminal or civil contempt, we are of the opinion that it was criminal contempt. We have held that the primary reason for punishment for criminal contempt of court is the necessity for maintaining the dignity, integrity, authority and respect toward the courts. Criminal contempt sanctions are also designed to have a deterring effect on others as well as the offender. *Hickinbotham* v. *Williams*, 228 Ark. 46, 305 S.W. 2d 841 (1957). Civil contempt proceedings are for the purpose of preserving and enforcing the rights of the private parties to the proceeding and to compel obedience to orders and decrees

made for the benefit of the parties. *Blackard, et al v. State*, 217 Ark. 661, 232 S.W. 2d 977 (1950). The matter of proof between the two forms of contempt is considerable. A criminal contempt citation requires proof beyond a reasonable doubt. On the other hand, a degree of proof required in civil contempt is that the trial court did not act in an arbitrary manner or against the weight of the evidence. *Dennison* v. *Mobley*, 257 Ark. 216, 515 S.W. 2d 215 (1974).

In *Dennison* v. *Mobley*, supra, the grandparents of a child whose parents were divorced were held in contempt of court for helping their son take the child out of the jurisdiction of the court in violation of the decree. The grandparents were immediately placed in jail. The following day this court issued a stay and granted certiorari. Upon the hearing of the case on its merits, we stated:

> Inasmuch as we are unanimously of the view that the order must be quashed, insofar as the alleged civil contempt is concerned, as clearly against the preponderance of the evidence, we will summarize the evidence only insofar as necessary to determine whether there was any substantial evidence to support the finding of criminal contempt. In doing this, we view it as we would in an ordinary criminal case, i.e., in the light most favorable to the court's findings, drawing all inferences and resolving all conflicts against petitioners. . . .

In *Hickinbotham* v. *Williams*, supra, the appellants were sentenced to a six-month term in jail. We also reduced the jail time which the appellants were ordered to serve.

The fact that the petitioner has been punished for criminal contempt in no way reflects on his responsibility or upon his exposure to civil contempt citation. However, in view of the fact that we hold he was found guilty of criminal contempt, we are of the opinion that the sentence was too severe. Therefore, it will be reduced to the time served. To that extent the decree will be modified; otherwise, it is affirmed.

Affirmed as modified.

Dudley, J., not participating.