Cite as 2021 Ark. App. 98

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CR-20-333

| | |
|---|---|
| MERCEDES LOREN TAYLOR<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** March 3, 2021<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CR-18-2655]<br><br>HONORABLE ROBIN F. GREEN, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Mercedes Loren Taylor appeals the finding of the Benton County Circuit Court holding her in contempt for appearing in court under the influence of marijuana. On appeal, Taylor argues that the contempt finding should be reversed both because it is supported by insufficient evidence and because it was made without adequate notice and opportunity to defend. We affirm.

Taylor was initially charged with possession of marijuana with intent to deliver, a Class D felony, and possession of drug paraphernalia, a Class A misdemeanor. She appeared in the Benton County Circuit Court on December 16, 2019, to plead guilty to the drug-paraphernalia charge and the reduced charge of possession of marijuana, also a Class A misdemeanor. Taylor answered yes to four questions from the court regarding waiving her rights and pleading guilty. The following colloquy then occurred:

| | |
|---|---|
| THE COURT: | Are – have you taken any drugs or anything before coming to court? |
| TAYLOR: | No. |
| THE COURT: | Would you pass a drug test right now? |
| TAYLOR: | Yes. |
| THE COURT: | I'm not so sure. Ms. Taylor, take a seat. We'll get you back up here. |

When Taylor's case was recalled, the court noted that Taylor was in handcuffs; the court then requested testimony from the probation officer who had administered the drug screen. The probation officer testified that Taylor tested positive for THC and had presented a picture of a "Michigan state marijuana card" but did not have the actual card. The court asked Taylor's attorney if she had any challenge to the testimony. Taylor's attorney stated that Taylor "has a prescription for medical marijuana in the state of Michigan where she lives; and after speaking with her, I think the last time she used was night before last before she came to Arkansas." The court found Taylor in contempt for appearing in court under the influence of THC, and it sentenced her to ten days in jail. Taylor's attorney objected to the finding and asked the court to reconsider based on Taylor's proof that she has a legitimate, valid prescription card for marijuana. The court stated that it ordered the drug test on the basis of Taylor's "demeanor" in court and that, whether it was alcohol or marijuana, her demeanor prevented her plea from being entered. The court further noted that Taylor did not have a prescription card from the state of Arkansas and that she only had a photograph of her Michigan card. The plea hearing was continued until January 21, 2020.

After the hearing, Taylor filed a motion to reconsider arguing that she has a valid medical-marijuana card issued by Michigan, her state of residence; that there was no evidence she had used marijuana in the state of Arkansas; and that there was no evidence of any contemptuous behavior. Three days later, she filed a motion to stay the county-jail order or, alternatively, grant an emergency hearing alleging that she had been denied all due process to which she was entitled. On December 20, the court ordered Taylor "cite released" from jail and ordered her to appear on January 21.

At the January hearing, the court recounted that Taylor had obstructed the court proceedings because it was not able to proceed with her plea due to her being under the influence. The court stated that it had cited Taylor out of jail after communicating with her attorneys but that it had ordered she would have to finish her contempt sentence if she could not produce the receipt or record of her recent acquisition of medical-grade THC. Taylor's attorney argued that the transcript of the December hearing revealed no basis to order the drug test and that her due-process rights had been violated due to the failure to provide her notice of the contempt charge and the right to counsel.[1] The court stated that at the December hearing, its suspicions were based on Taylor's being "unsteady on her feet, the look on her face, her personal affect" and the fact that she was appearing to plead guilty to drug charges. The court stated that it protected her constitutional rights by preventing her from entering a guilty plea without sufficient cognitive abilities. Taylor's attorney presented a receipt of marijuana purchases in Michigan but objected to the court's requiring

---

[1]Taylor's attorney stated that her attorney on the drug charges would likely have become a witness due to her interactions with Taylor prior to the plea hearing; thus, he claimed that Taylor was entitled to new counsel in the contempt matter.

Taylor to prove her innocence. The court found the receipt insufficient and stated that Taylor could either present more documentation or appeal. Taylor chose to appeal, and the court stayed the remaining contempt sentence pending the appeal.

We turn first to Taylor's sufficiency argument that the record does not support a conclusion that either her demeanor or positive drug test obstructed the court's plea proceedings. She argues that the record is silent as to her demeanor because she gave only one-word answers to the court's questions, and the court stated only that it was "not so sure" she would pass a drug test. Taylor argues that the positive drug test is insufficient proof of criminal contempt because the court made no further inquiry regarding whether the positive result was due to the prescription use of marijuana or the extent to which her ability to enter a plea might actually be impaired.

On appeal from an order of contempt, we view the record in the light most favorable to the circuit court's decision, and we affirm the decision if it is supported by substantial evidence and reasonable inferences therefrom. *Ark. Dep't of Human Servs. v. Dowdy*, 2018 Ark. 307, 558 S.W.3d 847. An act is contemptuous if it interferes with the order of the court's business or proceedings or reflects upon the court's integrity. *Etoch v. State*, 332 Ark. 83, 964 S.W.2d 798 (1998). A court's contempt power may be wielded to preserve the court's power and dignity, to punish disobedience of the court's orders, and to preserve and enforce the parties' rights. *Id.* The appropriateness of a contempt finding does not turn on whether the contemnor subjectively intended to engage in conduct that would be considered contemptuous. *Dowdy, supra.*

Both the Arkansas Constitution and the governing state statute distinguish between direct and indirect contempt. *See* Ark. Const. art. 7, § 26; Ark. Code Ann. § 16-10-108 (Repl. 2010). Direct contempt is a contemptuous act committed within the immediate presence of the court. *Dowdy, supra.* Indirect contempt is contemptuous behavior committed outside the presence of the court. *Id.* An obvious example of direct contempt, apart from open misconduct in the courtroom, is when a party comes to court drunk. *Id.* Summary punishment for contempt committed in the presence of the court is an inherent power reserved to the judiciary and cannot be abridged by legislation. *Id.*

The State contends that this case is controlled by *Burradell v. State*, 326 Ark. 182, 931 S.W.2d 100 (1996). Burradell appeared in municipal court to plead guilty to DWI. Before entering the courtroom, Burradell was "screened" by a representative of the Ozark Guidance Center who noticed that he smelled of alcohol. A police officer then administered a portable breathalyzer test, and Burradell registered a .13 blood alcohol level. After Burradell's attorney informed the judge, the judge summarily found Burradell in contempt. On appeal to the circuit court, Burradell argued that he could not be held in contempt for simply appearing in court under the influence of alcohol absent any disruptive behavior on his part. The State conceded that, other than smelling of alcohol and registering a .13 percent on the breath test, Burradell displayed no outward signs of intoxication. After a hearing, the circuit court found that Burradell's condition displayed a lack of regard for the court, eroded the solemnity of the proceedings, potentially impaired the proceedings, and demonstrated disrespect.

On appeal, the supreme court affirmed the contempt finding, stating as follows:

5

The power to punish for contempt is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings. *James v. James*, 237 Ark. 764, 375 S.W.2d 793 (1964). It is inevitable that, if a defendant is allowed to appear at a court proceeding in a state of intoxication, the authority and dignity of the court will suffer. Such behavior is, standing alone, a mark of disrespect to the court and the legal process. An act is contemptuous if it interferes with the order of the court's business or proceedings or reflects upon the court's integrity. *Witherspoon v. State*, 322 Ark. 376, 909 S.W.2d 314 (1995). The power of contempt is available to uphold public confidence in the majesty of the law, *Carle v. Burnett*, 311 Ark. 477, 845 S.W.2d 7 (1993), and to preserve the power and dignity of the court. *Edwards v. Jameson*, 284 Ark. 60, 679 S.W.2d 195 (1984). These interests are offended by a defendant who shows up for a plea hearing under the influence of alcohol. Public confidence in the majesty of the law would be sorely tried were a court to turn a blind eye to a defendant who appeared in court smelling of alcohol and intoxicated to the extent we have in this case. Further, the validity of the proceedings themselves could be called into question by the participation of an intoxicated defendant. Finally, we have recognized that one of the values of a court's exercise of its criminal contempt power is its deterrent effect on others. *Ward v. Ward*, 273 Ark. 198, 617 S.W.2d 364 (1981). A contempt citation such as the one issued against Burradell lets others know that such behavior will not be tolerated by the court.

*Burradell*, 326 Ark. at 185, 931 S.W.2d at 102.

Despite the distinctions Taylor notes between her case and *Burradell*, we agree with the State that its principles apply here. The fact that Taylor's positive drug test may have been the result of legally obtained medical marijuana does not excuse her appearing visibly impaired in court. The drug test was ordered as a result of the circuit court's personal observation of Taylor's demeanor. The court further found that her demeanor, whether caused by alcohol or marijuana, prevented her plea from being entered. When the court's finding was challenged at the January hearing, it expounded on its observations and recalled that its suspicions were based on Taylor's being unsteady on her feet, the look on her face, and her personal affect. Taylor's objection at the time of the contempt finding focused only on her possession of a medical-marijuana card from Michigan; she did not object to the court's statements about her demeanor or request further findings from the court.

6

In *Burradell*, the contempt finding was affirmed despite the fact that the court had not observed the defendant to be impaired. We hold that the court's observation of Taylor combined with the positive drug test supported its finding that she was under the influence of THC and was sufficient evidence of contempt. An act is contemptuous if it interferes with the order of the court's business or proceedings or reflects upon the court's integrity. *Burradell*, *supra*. As the court noted at the January hearing, defendants appearing under the influence impair the ability of the court to perform its business by requiring that their cases be reset. Furthermore, it is inevitable that if a defendant is allowed to appear at a court proceeding in a state of intoxication, the authority and dignity of the court will suffer. *Id.*

We now turn to Taylor's due-process arguments. She argues that no definite order put her on notice that she would be drug tested at her plea proceedings and that a positive result could lead to a criminal sentence. She claims that if perceived impairment might be investigated by a court-ordered drug test of a person claiming prescription drug use, she is entitled to know as much beforehand so that she might be prepared to explain a real or imagined perception of impairment by the court and defend a criminal charge of contemptuous obstruction arising from it. Taylor asserts that the circuit court's process failed any due-process scrutiny.

As stated above, summary punishment for contempt committed in the presence of the court is an inherent power reserved to the judiciary and cannot be abridged by legislation. *Dowdy*, *supra*; *see also* Ark. Code Ann. § 16-10-108(c) ("Contempts committed in the immediate view and presence of the court may be punished summarily. In other cases, the party charged shall be notified of the accusation and shall have a reasonable time

7

to make his or her defense."). Arkansas Code Annotated section 16-10-108(c) is entirely consistent with the inherent power of the court to summarily punish contumacious conduct occurring in its presence. *James v. Pulaski Cnty. Cir. Ct.*, 2014 Ark. 305, 439 S.W.3d 19. This power is necessary to enforce the authority of the court and to protect the dignity of the proceedings before it. *Id.*

Taylor concedes that she is not entitled to notice that she should not obstruct court proceedings by being too impaired to enter a plea. But that is what the court found, stating "we couldn't enter this with her demeanor before this Court whether it was alcohol or marijuana." Due to her appearance before the court, Taylor was summarily held in contempt, and in a summary-contempt proceeding, a contemnor is not entitled to notice and an opportunity to be heard. *See James*, *supra*. Accordingly, we affirm.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*David R. Raupp* and *Gregg Parrish*, Arkansas Public Defender Comm'n, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.